JODI LINKER
Federal Public Defender
Northern District of California
TAYLOR FATHERREE
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Taylor_Fatherree@fd.org

Counsel for Edgardo Iraheta-Ayala

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>EDGARDO IRAHETA-AYALA<br>Defendant. | **Case No.:** CR 26–71139 LJC<br>**MOTION TO REVOKE DETENTION ORDER**<br>**Court:** Courtroom 8, 19th Floor |

**BACKGROUND**

Mr. Iraheta-Ayala is charged with one count of simple assault in violation of 18 U.S.C. § 3559(a)(5), a class B misdemeanor. Dkt. 1. On September 1, 2026, the magistrate court heard a government proffer that it was entitled to a detention hearing based on serious risk of flight, and ordered a detention hearing. Dkt. 6. Pretrial Services interviewed Mr. Iraheta-Ayala and recommended he be released to the residential reentry center. On September 9, 2026, a detention hearing was held and the government argued that no combination of conditions could reasonably assure Mr. Iraheta-Ayala's appearance at court. The magistrate court ordered Mr. Iraheta-Ayala detained. Dkt. 12.

The alleged incident leading to this charge occurred more than one year before the complaint was filed. Mr. Iraheta-Ayala's simple assault charge stems from a single alleged incident on August 5, 2025. Mr. Iraheta-Ayala is alleged to have masturbated behind a woman on federal property and ejaculated, making contact with her clothing. In November 2025, investigators interviewed Mr. Iraheta-Ayala, told him what he was accused of, and took his DNA. On August 25, 2026, a criminal complaint was filed. Dkt. 1. Mr. Iraheta-Ayala was taken into federal custody one week later. Dkt. 10.

At the September 9th detention hearing, the government argued only that Mr. Iraheta-Ayala posed a risk of nonappearance that no combination of conditions could mitigate. One of the reasons the government said Mr. Iraheta-Ayala should be detained was because he has an immigration detainer and his removal could prevent the case from continuing. Declaration of Taylor Fatherree (Fatherree Decl.), Ex. A at 4:03-4:28; 4:58-6:09. Defense counsel objected to possible removal being considered. The magistrate court expressed concern that due to the fact reported by the government that Mr. Iraheta-Ayala has an immigration detainer, he may be motivated to flee, especially as someone who has been homeless and in this country for a long time. *Id*. at 9:05-10:16; 25:43-26:39. Defense counsel objected to consideration of the detainer as impermissible under *United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015) and argued that reading in volitional flight from the fact of the detainer would swallow the rule that courts cannot consider the detainer as evidence of flight. Ex. A at 10:17-10:36.

## ARGUMENT

### I. There is no serious risk of flight under § 3142(f)(2)(A).

#### A. The government must provide concrete evidence of a serious risk of flight.

The Bail Reform Act "carefully limits the circumstances under which detention may be sought." *United States v. Salerno*, 481 U.S. 739, 747 (1987).

As a leading case on the Bail Reform Act's application to § 1326 cases explains, "[D]etention hearings are authorized only if the defendant (i) is charged with one of five categories of serious crimes [under 18 U.S.C. § 3142(f)(1)] – crimes that, if the defendant were to recidivate while on pretrial release, pose the greatest risk to community safety; or (ii) presents a serious risk of flight, or a serious risk of obstruction or intimidation [under § 3142(f)(2)] – acts that present the greatest risk to the integrity of the judicial process." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1135 (D. Idaho 2023). "Absent one of these serious circumstances . . ., a defendant *must* be released on personal recognizance, unsecured appearance bond, or conditions." *Id.* (emphasis in original).

The crime of simple assault is not enumerated in § 3142(f)(1). As a result, the government is entitled to a detention hearing only if it shows by a "clear preponderance of the evidence," that Mr. Iraheta-Ayala poses a serious risk of flight or obstruction/intimidation under § 3142(f)(2). *See Motamedi*, 767 F.2d at 1406.[1]

If the government does not establish that Mr. Iraheta-Ayala poses a serious risk of flight by a preponderance of the evidence, the BRA requires the Court release the defendant on personal recognizance under § 3142(b), or on conditions necessary to reasonably assure appearance under § 3142(c).

The term "serious risk of flight" is defined more narrowly than risk of non-appearance. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1136-37. It requires that the defendant engage in "active movement." *Id.* at 1138. A "'serious risk of flight' under § 3142(f)(2)(A) is a great risk – beyond

[1] In a recent nationwide study, The University of Chicago Law School's Federal Criminal Justice Clinic (FCJC) found that federal district courts do not consistently adhere to the legal standard in (f)(2) cases, in violation of the Bail Reform Act. Across hundreds of (f)(2) cases like this one, dozens of defendants were unlawfully detained at their initial appearances even though "no statutory basis for detention existed under § 3142(f)." Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 91 (2022), https://freedomdenied.law.uchicago.edu/report.

average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *Id.* "[The standard] demands a substantial showing that the defendant will take deliberate, voluntary action to flee to evade judicial oversight." *United States v. Rodriguez-Fuentes*, 2025 WL 711955, *2 (E.D. Ky. Mar. 5, 2025).

"That the defendant poses some risk of flight is not enough." *United States v. Mejias-Mejias*, --- F. Supp. 3d --- 2025 WL 846435, *5 (D. Md. Mar. 18, 2025).[2] Rather, the government must show that "in the absence of conditions of release[,] there is a heighted likelihood of flight that is demonstrably more than the risk posed by a generic defendant charged with a similar offense." *United States v. Runsdorf*, No. 22-mj-8015-WM, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022); *accord White*, 2021 WL 2155441, at *12 (noting, when determining what constitutes a "serious risk of flight," that "*every* case involves some degree of flight risk" (emphasis in original)).

To meet its threshold burden, the government must present "'concrete information' not 'mere conclusory allegations,'" that Mr. Iraheta-Ayala will flee. *Figueroa-Alvarez*, 681 F. Supp. 3d. at 1148. The Ninth Circuit rejects "a categorical rule that would prevent release for undocumented defendants," and requires instead "individualized" evidence in each case. *United States v. Santos-Flores*, 794 F.3d 1088, 1092–93 (9th Cir. 2015). "The § 3142(f) categories are not mere incantations that will conjure a hearing upon their simple utterance. The Act requires that the government make a factual showing to justify why it should be given a shot at detention." *United States v. Subil*, No. 23-cr-30-TL, 2023 WL 3866709, at *4 (W.D. Wash. June 7, 2023).

### B. The government has not produced evidence that Mr. Iraheta-Ayala is a serious risk of flight.

The government did not charge this case for more than a year after the incident. It now says that Mr. Iraheta-Ayala is such an unmitigable risk of flight and nonappearance that he must be detained. However, investigators met with Mr. Iraheta-Ayala in November 2025, collected his DNA, and told him what he was accused of. Dkt. 1 at 6-7. **Despite knowing that he was under**

---

[2] Courts around the country agree. *See*, *e.g.*, *United States v. Molina-Orantes*, No. 25-CR-00079-AN, 2025 WL 1177654, *13 (D. Or. Apr. 23, 2025); *United States v. Pavon-Andino*, No. CR 25-MJ-00022-TPO, 2025 WL 446143 (D. Colo. Feb. 10, 2025); *United States v. Romero-Martinez*, No. 23-CR-176(JAM), 2024 WL 965150, *4 (D. Conn. Mar. 6, 2024).

**investigation for a federal crime and having given his DNA, he took no steps for nine months to flee the area or avoid prosecution.** The government cannot show a heightened serious risk of flight for someone who has already demonstrated a lack of will to flee this exact prosecution.

Mr. Iraheta-Ayala has no history of failure to appear for court. Pretrial Services did not even uncover any warrants for failure to appear, let alone convictions. Pretrial Services Report at 11. Although Mr. Iraheta-Ayala has a warrant for violation of post release community supervision, he does not have a history of fleeing prosecution.

Mr. Iraheta also lacks incentive to flee from this charge because he does not face significant exposure. As a class B misdemeanor, the maximum time Mr. Iraheta-Ayala could be imprisoned if found guilty is six months. 18 U.S.C. § 3559(a)(5). Further, Mr. Iraheta-Ayala has reason to stay in the district. He has been in the area for more than 20 years. He has two children and a sister in Monterey County. Pretrial Services Report at 1-2.

The possibility of Mr. Iraheta-Ayala's future removal is not a relevant consideration. Twice in the last decade, the Ninth Circuit has held that "the 'individualized evaluation' required by the Bail Reform Act does not include consideration of . . . the possibility that the defendant, if released from criminal custody, would be held in immigration custody." *United States v. Diaz-Hernandez,* 943 F.3d 1196, 1198–99 (9th Cir. 2019); *accord Santos-Flores*, 794 F.3d at 1091. A "district court's decision to detain [a defendant] pending trial based on the possibility of his detention or removal by immigration authorities . . . is contrary to the express language of the Bail Reform Act." *Santos-Flores*, 794 F.3d at 1091. That's because, when passing the Act, "Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings." *Id.* at 1090.

[Indeed, "immigration status is not a listed factor" for consideration in the Bail Reform Act. *Diaz-Hernandez*, 943 F.3d at 1198. And "while [a]lienage may be taken into account, [] it is not dispositive." *Diaz-Hernandez,* 943 F.3d at 1198 (quoting *Santos Flores*, 794 F.3d at 1090). Alienage's role can be assessed through factors like whether the defendant has been employed in the U.S. or has any relatives here. But, at the end of the day, alienage cannot "tip the balance either for or against detention." *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1980).]

In summary, there was no basis to hold a detention hearing in the first place. The government

failed to prove by a preponderance of the evidence that Mr. Iraheta-Ayala presents a heightened risk of volitional flight under § 3142(f)(2). The evidence establishes the opposite: that Mr. Iraheta-Ayala does not present a serious risk of flight, given the fact that he failed to flee when notified of this investigation and submitting to a DNA sample nine months before this prosecution commenced, his lengthy ties to the community and children in the area, lack of incentive and ability to flee, and demonstrated history of appearing for court.

Because there was no basis for a detention hearing, this court must order Mr. Iraheta-Ayala released with appropriate conditions.

## II. Even if the Court finds a detention hearing is warranted, the conditions proposed by Pretrial Services mitigate any risk and Mr. Iraheta-Ayala should still be released.

The Bail Reform Act reflects a congressional judgment that "only in rare cases should release be denied," and "any doubts regarding the propriety of release are to be resolved in favor of the defendant." *Santos-Flores*, 794 F.3d at 1090. Even when the government establishes a serious risk of flight, this court must order the defendant's release "subject to the least restrictive further condition, or combination of conditions" that would reasonably assure his appearance. 18 U.S.C. § 3142(c)(1)(B); *see, e.g., United States v. Ibarra*, No. 24-mj-00385-KFW-1, 2025 WL 27474 (D. Me. Jan. 3, 2025) (finding serious risk of flight, but that conditions of release would assure the defendant's appearance in his pending § 1326 case).

### A. The government cannot prove by a preponderance of the evidence that no combination of conditions will reasonably assure Mr. Iraheta-Ayala' appearance as required.

Mr. Iraheta-Ayala asks the Court not to release him to the street, but to the residential reentry center. This will be a stabilizing place for him with clear rules. This is a major change since he was previously homeless, and should assuage any concerns the Court has. Pretrial Services will also supervise him closely, and recommends he receive outpatient substance use treatment and submit to testing. Mr. Iraheta-Ayala has detoxed from substances and is very motivated to begin treatment.

If the Court finds these conditions insufficient, it could order electronic monitoring. Although Pretrial Services does not believe it is necessary in this case, effective at reducing risk of flight.[3] *See*

[3] *See, e.g.*, Samuel R. Wiseman, *Pretrial Detention and the Right to the Monitored*, 123 Yale L. J.

*United States v. O'Brien*, 895 F.2d 810, 814–16 (1st Cir 1990) (describing reduction in flight rate from monitoring program and concluding that "evidence concerning the effectiveness of the bracelet alone [] arguably rebuts the presumption of flight"); *United States v. Neves*, 11 F. App'x 6, 9 (1st Cir. 2001) ("We have recognized the value of electronic monitoring in pretrial release cases especially in allowing early detection of possible flight.") (internal citations and quotation marks omitted); *United States v. Demmler*, 523 F.Supp.2d 6767, 684 (S.D. Ohio 2007) ("In any event, electronic monitoring will adequately alert law enforcement if [the defendant] attempts to flee."); *United States v. Stewart*, 1997 WL 325784, at *4 (E.D. Pa. June 6, 1997) ("Such monitoring would act as a deterrent to flight and thus help ensure the government of [the defendant's] presence at [ ] trial.").

Overall the Court has many conditions at its disposal to mitigate any risk of nonappearance, for a person who has no failures to appear and has already shown no inclination to flee this prosecution.

**B. The government does not argue that Mr. Iraheta-Ayala is a danger to the community, and it has not met its burden to show that no combination of conditions can reasonably assure the safety of the community.**

While the crime Mr. Iraheta-Ayala is accused of is serious, it is the lowest possible level of federal crime, with a maximum penalty of six months. Mr. Iraheta-Ayala is not accused of hitting anyone, possessing or using a weapon, or making any threats. Many defendants who actually are accused of those things are released on bond in this district. Likely recognizing this, the government did not argue at the detention hearing that Mr. Iraheta-Ayala was a danger to the community, and it fails to prove by clear and convincing evidence that no combination of conditions can reasonably assure the safety of the community.

**CONCLUSION**

For the aforementioned reasons, the Court should revoke the magistrate judge's detention order and order Mr. Iraheta-Ayala released on conditions.

---

1344, 1347–48 (2014) ("Increasingly sophisticated remote monitoring devices have the potential to sharply reduce the need for flight-based pretrial detention . . . . [T]he question of finding other ways of ensuring a non-dangerous defendant's presence at trial is one not of ability, but of will. . . ."); *id.* at 1368–74 (citing studies in both European and American contexts to demonstrate that electronic monitoring is at least as effective as secured bonds at deterring flight, and that it comes at far reduced cost to both the defendant and the government).

Dated: September 10, 2026

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

/S

TAYLOR FATHERREE
Assistant Federal Public Defender