CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JEAN FUNDAKOWSKI (CABN 328796)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7014
FAX: (415) 436-7234
Email: jean.fundakowski@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDGARDO IRAHETA-AYALA,<br><br>Defendant. | Case No. 3:26-CR-71139 LJC<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER**<br><br>Hon. Jacqueline Scott Corley |

## INTRODUCTION

The defendant, Edgardo Iraheta-Ayala, is charged by complaint with one count of violation of 18 U.S.C. § 113(a)(5), Simple Assault Within the Territorial or Maritime Jurisdiction of the United States, a Class B Misdemeanor. As the Pretrial Services Report indicates, the defendant has a long history of using aliases, violating court-ordered terms of supervision, and has no employment history, bail resources, proposed sureties or custodians, and few strong family ties to this district; he is currently subject to a Monterey County Superior Court bench warrant for Revocation of Post Release Community Supervision. Based on these facts, the government argued that the defendant poses a serious risk of flight and met its burden by a preponderance of the evidence to detain the defendant pending trial. Following a detention hearing on September 9, 2026, Magistrate Judge Lisa J. Cisneros ordered the defendant detained, and the pending motion followed. The United States respectfully opposes the defendant's motion to revoke the detention order under 18 U.S.C. § 3145(b). ECF 14.

## I. BACKGROUND

### A. The Offense

On August 5, 2025, at approximately 4:07 p.m., U.S. Park Police ("USPP") responded to a report of sexual assault at a popular scenic walking path overlooking the San Francisco Bay at Battery Black Point, which is near Fort Mason and within the exclusive federal jurisdiction of the United States. The female victim, ("V-1"), told Officer Gonzalez that she was sitting on a large tree stump and sketching when a stranger quietly sat down next to her. Without her knowledge, the man began to masturbate. V-1 continued to sketch and felt something make contact with her lower back and leggings. As she turned around, she saw that saw the man's penis was erect and exposed, he was ejaculating, and realized the item she had felt touch her was bodily fluid from his penis. She yelled and fled the area, while the man, who she described as appearing unphased by his actions, walked away.

USPP officers responded to V-1's location, where they took her statement, obtained a swab of the white material she identified on her leggings, and put the leggings into an evidence bag and logged them into evidence. USPP officers responded to the scene of the assault, but the suspect had disappeared; they observed and took swabs of two small white viscous spots on the ground next to the tree stump whose appearance was consistent with ejaculate.

Over the following months, USPP obtained DNA evidence linking the defendant to the assault on V-1. On August 12 and 13, 2025, USPP ID Technician Carson Ogarro photographed the leggings with a UV light and submitted the swab samples from the scene and the leggings to the San Francisco Police Department ("SFPD") Crime Lab for DNA analysis. On September 4, 2025, the Crime Lab prepared a report indicating that it had found DNA suitable for creation of a DNA profile and entry into the Combined DNA Index System (CODIS) to check against known profiles stores in local, state, and federal DNA databases. On September 26, 2025, the Crime Lab informed USPP that it had received a CAL-DNA Data Bank Hit Notification for the defendant, Edgardo Iraheta-Ayala. On October 8, 2025, V-1 failed to identify the defendant in a USPP photo lineup containing the defendant's mugshot and the mugshots of five similar looking individuals. USPP learned that the defendant was being detained in Monterey County Jail on an unrelated charge, obtained a DNA search warrant, and obtained a reference DNA sample from the defendant on November 18, 2025; the defendant received Miranda warnings during this meeting and agreed to speak with officers about the reason for collecting his DNA. USPP submitted the reference sample to the Crime Lab for further analysis. On January 9, 2026, the SFPD Crime Lab issued a report finding very strong support for the inclusion of the defendant's DNA in the DNA extracted from V-1's leggings, which contained DNA from two contributors. Specifically, the Crime Lab found that the likelihood of obtaining the DNA results was at least 8.09 septillion times greater if the DNA in the sample from V-1's leggings originated from the defendant and a random, unrelated person, than from two random unrelated persons. The Crime Lab also compared the reference sample from the defendant to samples obtained from two cuttings of V-1's leggings and also found very strong support for the proposition that the defendant's DNA was included in the samples from both cuttings.

The United States learned that the defendant was expected to be released from Monterey Jail custody for violation of his Post Release Community Supervision, and on August 24, 2026, charged the defendant by complaint with one count of violation of 18 U.S.C. § 113(a)(5), Simple Assault Within the Special Territorial and Maritime Jurisdiction of the United States, a Class B Misdemeanor. ECF No. 1. The defendant was arrested on a federal arrest warrant and made an initial appearance on the complaint on September 1, 2026; the government moved for detention based on serious risk of flight under 18

U.S.C. § 3142(f)(2)(A). ECF No. 6. The defendant refused transportation for his detention hearing on September 2, 2026, due to what the parties were told in court were ongoing symptoms from withdrawal from controlled substance use. ECF No. 7. Magistrate Judge Cisneros reset the detention hearing for September 9, 2026.

**B. Pretrial Services Report**

The Pretrial Services Report indicated that the defendant came to the United States from El Salvador in 2005 and has a substantial criminal history beginning in 2007 and ending in 2026. That criminal history includes a 2018 felony conviction for evading a pace officer, 16 misdemeanor convictions, and numerous custodial sentences for violations or revocations of state probation. The misdemeanor convictions included 2014 and 2017 for domestic violence and, most recently, a June 2026 conviction for possession of unlawful drug paraphernalia and 2023 convictions for public nuisance and possession of a controlled substance. The defendant appears to have been in custody for post release community supervision violations from August 24, 2024, to December 8, 2024; from September 11, 2025, to December 12, 2025; and June 2, 2026, to August 20, 2026. The criminal records check also reflected that the defendant has used 13 aliases of his own name and four alternate dates of birth.

The defendant reported being transient in San Francisco and/or his mother's residence in Monterey, California, for the past 12 years, though he provided an address for his mother which Pretrial Services could not verify and did not appear to exist. He did not report any bail resources, financial assets or liabilities, and could not identify supporting family members or friends who could serve as custodians or sureties if he were to be released. He reported used fentanyl and methamphetamines on a daily basis as recently as three days before the interview and had no history of substance abuse treatment. He had no reported current employment or past employment history. He reported he has no contact with his two children, ages 18 and 15, who live in Monterey. He did not provide any verification or surety resources, so Pretrial was unable to verify the contents of much of the bail report.

Pretrial Services noted five aggravating factors that indicated the defendant posed a risk of nonappearance, including (1) substance abuse history; (2) lack of verifiable, legitimate employment; (3) unstable/unsuitable living condition; (4) and non-compliance while pretrial release, probation, parole or supervised release; and (5) use of aliases or false identification. However, Pretrial concluded that the

risk could be reasonably mitigated and recommended that the defendant be released on a $5,000 unsecured bond and ordered to reside at the halfway house at 111 Taylor Street, together with restricted travel, surrender of his travel documents and any weapons, and mandatory drug testing and substance abuse treatment. *Id.*

**C. The Detention Hearing**

The detention hearing was held on September 9, 2026, at which the government moved for detention based on risk of flight. In addition to the facts set forth in the complaint about the offense and the information in the Pretrial Services Report, the government provided the Court and defense counsel by e-mail with a statement from V-1 supporting the defendant's detention and proffered that Monterey Superior Court had issued a bench warrant on August 31, 2026 for the defendant based on violation of his terms of Postrelease Community Supervision.[1] The government also notified the Court that it had been informed that the defendant was a citizen of El Salvador; that there was an immigration detainer on the defendant; and if he were not detained, the government anticipated that U.S. Immigrations and Customs Enforcement would execute the detainer and remove the defendant to El Salvador.

Defense counsel opposed the government's motion for detention, citing, among other bases, that the defendant had no history of prior failures to appear in court based on the Pretrial Services Report; that he had learned he was under investigation for the charged offense in November 2025, when his DNA was collected, and had not fled; and that the Court could not use the existence of the immigration detainer as a factor supporting detention under existing Ninth Circuit precedent. *See United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015).

Judge Cisneros heard argument from both parties, considered the victim statement, and ordered the defendant remanded. The Court's detention order found by a preponderance of the evidence that no conditions or combinations of conditions will reasonably assure the defendant's appearance, based on findings that "the defendant has no prosocial connections to the Northern District of California,

[1] The government did not have the warrant or warrant number available at the time of the detention hearing but can now proffer that the warrant was issued in Case No. 26CW000134 and is a felony warrant for violation of Cal. Pen. Code § 3455(a)—Revocation of Post Release Community Supervision, issued by Monterey County Superior Court Judge Stephanie Hulsey. A copy of the warrant was produced to defense counsel as part of the discovery for this case on September 11, 2026.

including current or past employment history, fixed residence, financial resources, or family members or friends who are willing to serve as sureties or custodians;" that he has "lived a highly transient existence;" "appears to have an ongoing substance abuse dependency;" "has used 13 aliases or variations of his own name;" and has demonstrated "a sustained inability to comply with court-ordered release conditions." ECF No. 12, Detention Order at 2. Judge Cisneros did not cite the defendant's immigration status or detainer as a factor or basis for her findings.

## II. LEGAL STANDARD

Under the Bail Reform Act, the government may seek detention in a case that "involves the possession or use of a firearm." 18 U.S.C. § 3142(f)(1)(E). The Court "shall order . . . detention" if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). To make those findings, the Court must consider: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. *Id.* § 3142(g). A dangerousness finding requires clear and convincing evidence, and a nonappearance finding requires preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (citation omitted).

The defendant may ask a district judge to revoke a magistrate judge's detention order. 18 U.S.C. § 3145(b). In reviewing a § 3145(b) motion, the district judge considers *de novo* the magistrate judge's detention order and may consider new evidence. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).

## III. ARGUMENT

### A. The Government Has Proven the Defendant Poses a Serious Risk of Flight Independent of His Immigration Status.

The government met its burden under the Bail Reform Act at the September 9, 2026, detention hearing to demonstrate by a preponderance of the evidence that the defendant poses a serious risk of flight, and so the pretrial detention order should be upheld. 18 U.S.C. § 3142(f)(2)(A). At the detention hearing, the government argued that the defendant's profound lack of ties to the community documented

in the Pretrial Services Report and several other non-immigration factors heighten his risk of flight. First, he has no current or past employment history or financial assets he would lose by leaving. Second, he reported daily use of methamphetamine and fentanyl up until August 29, 2026, and no prior substance abuse treatment history, raising a serious concern that he would leave Taylor Street in search of drugs in the nearby Tenderloin district. Third, he appears to have no close family ties; he reported no contact with his two children and told Pretrial Services he had previously lived with his mother, but could not provide a legitimate address for her. Pretrial Servies was unable to verify his claim that he has regular contact with his sister. Fourth, he had no sureties or custodians willing to sign a bond or post other collateral which would ensure his appearance. Fifth, he is currently subject to a bench warrant for revocation of Post Release Community Supervision, indicating an ability to follow court-ordered restrictions. Sixth, he has no fixed address or working cell phone number, and would thus prove very difficult to find if he failed to appear for future proceedings. By his own admission, he has spent the last 12 years as a transient, splitting his time between San Francisco and Monterey, a vast swath of territory. Seventh, he has a history of using aliases and alternate dates of birth, likely to avoid detection by law enforcement.

These facts are all independent of the defendant's immigration status or the fact that he has an active immigration detainer. *See, e.g. United States v. Flores Santos*, 794 F.3d 1088, 1091-93 (9th Cir. 2025) (holding defendant could not be detained based on the possibility of his detention or removal by immigration authorities but affirming detention order based on other individualized factors showing risk of flight). Indeed, the detention order does not state that the defendant's immigration status or detainer was a factor in the Court's decision to detain the defendant. *See generally* ECF No. 12.

**B. The Section 3142(e)(1) Factors Support Detention.**

The Bail Reform Act directs the Court, when determining whether conditions of release that will reasonably assure a defendant's appearance and the safety of any other person and the community, to take into account four factors: the nature and circumstances of the charged offense, the history and characteristics of the defendant, the weight of the evidence, and the nature and seriousness of the danger to any person or the community. An analysis of these factors supports the detention order.

**1. Nature and Circumstances of the Charged Offense**

The government concedes that simple assault is not one of the enumerated offenses set forth in Section 3142(g)(1), which include crimes of violence, terrorism, and offenses involving drugs, firearms, explosives, or minor victims, among others. While the offense charged is a Class B Misdemeanor, such an act of nonconsensual sexual contact is highly offensive and sexual: the defendant forced an unwilling victim to be involved in an overt sexual act without her knowledge and without warning, in a public space. The incident has had a profoundly negative effect on V-1, who provided a statement in writing in support of the defendant's pretrial detention.

**2. Weight of the Evidence**

The DNA evidence in this case against the defendant is compelling. U.S. Park Police submitted the buccal swab they took from the defendant pursuant to a search warrant to the SFPD Crime Lab, which compared the reference sample to DNA swabs extracted from V-1's leggings, and found very strong support for the inclusion of the defendant's DNA on V-1's leggings. There is no evidence in this case of any prior connection or relationship between the defendant and V-1 that is a plausible explanation for the presence of his DNA on V-1's clothing.

**3. History and Characteristics of the Defendant**

As detailed above, the defendant's history and characteristics demonstrate that he is highly mobile and has very weak ties to the Northern District of California. All of the factors set forth in Section g(3) are at play here: the defendant has no ties to his family here, as indicated by his lack of relationship with his children and the inability of Pretrial Services to confirm any relationship with his mother, the mother of his children, or his sister; he has no employment; no financial resources; and a very recent history of drug abuse, including a June 2026 misdemeanor conviction for possession of drug paraphernalia. While he appears to have resided in the district for the past twenty years, he also committed the charged offense while on Post Release Community Supervision out of Monterey County. Furthermore, while there is no documented history of failures to appear in court in the Pretrial Services Report, since August 2024 he has spent approximately eight and a half months in custody for Post Release Community Supervision violations or revocations.

**4. Nature and Seriousness of the Danger to Any Person or the Community**

The government did not move for detention based on the danger the defendant poses to any person or the community. However, the defendant's continued abuse of drugs and the aggressive sexual act he forced on V-1 in August 2025 are a cause for concern.

**CONCLUSION**

The government has met its burden to show by a preponderance of the evidence that the defendant poses a serious risk of flight independent of any consideration of the fact that the defendant has an active immigration detainer. Because detention is appropriate under the Bail Reform Act under these circumstances, this Court should uphold Judge Cisneros' detention order and the defendant should remain detained pending further proceedings.

DATED: September 11, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

JEAN FUNDAKOWSKI
Assistant United States Attorney