CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 126569)
Chief, Criminal Division

JEAN FUNDAKOWSKI (CABN 236255)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7014
FAX: (415) 436-7234
Email: jean.fundakowski@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>EDGARDO MAURICIO IRAHETA-AYALA,<br>Defendant. | Case No. 3:26-CR-00466 LJC<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Hearing Date: September 30, 2026<br>Hearing Time: 9:00 a.m.<br>Courtroom: Hon. Lisa J. Cisneros |

**INTRODUCTION**

On August 5, 2025, the defendant, Edgardo Iraheta-Ayala, forced another person to be an unconsenting participant in a highly offensive, invasive, and sexual act without her knowledge. He acted in broad daylight in a public park where the victim felt safe and was enjoying a sunny afternoon off from work. He destroyed her sense of safety in her community and damaged her ability to trust others. Notwithstanding the collateral immigration consequences of his arrest and apprehension in this case, a custodial sentence is necessary and appropriate as a just punishment for this egregious conduct.

The United States respectfully requests that the Court sentence the defendant, Edgardo Mauricio Iraheta-Ayala, to 5 months' incarceration plus one court day so that he can be released from 450 Golden Gate Avenue into U.S. Immigration and Customs Enforcement custody for deportation proceedings, as

well as the mandatory $10 special assessment. If the Court decides not to impose a custodial sentence, in addition to release from 450 Golden Gate Avenue and payment of the $10 mandatory special assessment, the United States requests that the Court sentence the defendant to a probationary term of 3 years, including 2 special conditions: (1) prohibiting the defendant from entering the Golden Gate National Recreation Area or the Presidio of San Francisco; and (2) prohibiting the defendant from reentering the United States without the express consent of the Secretary of the Department of Homeland Security, and requiring him to report to the nearest Probation Office within 72 hours of any reentry into the United States. Accordingly, the United States will submit a proposed release order for the Court's consideration immediately following the Court's pronouncement of judgment at the sentencing hearing.

## I. OFFENSE CONDUCT AND PROCEDURAL HISTORY

### A. May 5, 2025, Sexual Assault at Battery Black Point[1]

On August 5, 2025, U.S. Park Police ("USPP") responded to a report of a sexual assault at Battery Black Point, a part of Fort Mason located within the Golden Gate National Recreation Area and part of the exclusive jurisdiction of the United States. Compl. at ¶ 4, ECF No. 1. The victim, ("V-1") was sitting on a tree stump overlooking the San Francisco Bay and drawing in a sketchbook when a stranger, later identified by DNA evidence as the defendant, sat down behind her. *Id*. at ¶ 4. Without V-1's knowledge, the defendant exposed himself and began to masturbate until the point that he ejaculated onto V-1's body. *Id*. V-1 did not realize what was happening until she felt something touch or make contact with her exposed lower back and leggings; at that point, she immediately turned around, saw the defendant's exposed genitalia, and understood what had happened without her knowledge or consent. Id. at ¶ 6. V-1 yelled "What the fuck are you doing?" and ran towards Van Ness Avenue, where she contacted law enforcement to report the incident. *Id*.

By the time USPP officers arrived on scene, the assailant had left the area and could not be

[1] Because the defendant did not plead guilty pursuant to a plea agreement and the parties agreed to waive a Presentence Investigation Report ("PSR") to expedite sentencing, there are no factual findings that have been made by Probation or agreed to by the parties. Accordingly, the facts in this section are from the U.S. Park Police's sworn affidavit in the criminal complaint, which can be found at ECF No. 1.

located. *Id.* at ¶ 5. USPP interviewed V-1, who described the incident, and took a swab of the whitish spots on V-1's leggings, which appeared consistent with ejaculate. *Id*. at ¶ 7. USPP collected the leggings and logged them into evidence, together with samples of small, whitish spots USPP discovered on the ground near the tree stump. *Id.* at ¶¶ 8-9.

USPP submitted the swabs from the leggings and ground to the San Francisco Police Department Crime Lab for DNA analysis. *Id.* at ¶ 10. On September 4, 2025, the Crime Lab performed biological screening and genetic analysis of the submitted evidence and was able to generate a suitable profile from the leggings swabs for entry into CODIS (the Combined DNA Index System) to check against known profiles stored in local, state, and federal DNA databases. *Id*. at ¶¶ 11-12. On September 26, 2025, the USPP received a Cal-DNA Hit Notification for the defendant. *Id.* at ¶ 13. USPP ran a criminal history check and learned that the defendant had an extensive criminal history dating from 2007 in San Francisco and Monterey Counties, including a trespassing incident on April 29, 2025, in which USPP reports showed the defendant, using an alias BERNYE LOPEZ, boarded a private vessel in Aquatic Park Cove, a national maritime park next to Fort Mason and near the site of the assault on V-1. *Id.* at ¶ 13. According to USPP's investigation of the prior incident, the vessel's owner confronted the defendant, who fled the scene in a kayak. USPP and SFPD, which share jurisdiction of the area, caught the defendant the following day and USPP cited him for trespass. *Id*.

On November 18, 2025, USPP obtained a state DNA search warrant and obtained a reference sample of DNA from the defendant, who was in Monterey Country Jail serving a custodial sentence for an unrelated offense. *Id*. at ¶ 15. USPP submitted the reference sample to the Crime Lab for comparison with the existing samples from V-1's leggings and the ground near the tree stump. *Id.*

On January 9, 2026, the SFPD issued a supplemental report finding "very strong support" for the inclusion of the defendant's DNA in the swab from V-1's leggings. *Id.* at ¶ 17. Specifically, the Crime Lab found the likelihood of obtaining the DNA results was at least 8.09 septillion times greater if the DNA on V-1's leggings originated from the defendant and a random, unrelated person than from two random, unrelated people. *Id.* The Crime Lab also prepared two samples from cuttings they obtained from the stained area on V-1's leggings and compared the DNA from those cuttings to the reference sample obtained from the defendant. *Id.* at ¶¶ 18-19. As with the swab samples from the leggings

prepared by USPP, the Crime Lab found "very strong support" for the inclusion of the defendant's DNA in the DNA extracted from both cutting samples. *Id*. at ¶¶ 19-20. Specifically, for Fraction 1 (the first cutting) the Crime Lab found there that the likelihood of obtaining these DNA results was at least 8.94 septillion times greater if the DNA originated from IRAHETA-AYALA and two random, unrelated people than from three random, unrelated people. For Fraction 2 (the second cutting), the Crime Lab concluded the likelihood of obtaining the DNA results was at least 9.44 septillion times greater if the DNA in Fraction 2 originated from IRAHETA-AYALA and a random, unrelated person than from two random, unrelated people.

### B. Procedural History

The defendant was alternatively itinerant and in Monterey County Jail for Probation violations throughout the course of 2026 after USPP received the supplemental DNA analysis of the reference DNA sample. Upon learning that the defendant was expected to be released from the Monterey Jail and would likely be difficult to locate, the United States obtained a criminal complaint and arrest warrant from U.S. Magistrate Judge Thomas S. Hixson on August 24, 2026, charging the defendant for the assault on V-1 with violation of 18 U.S.C. § 113(a)(5)—Simple Assault within the Special Maritime and Territorial Jurisdiction of the United States, a Class B Misdemeanor. ECF No. 1. On September 1, 2026, the defendant made his initial appearance in federal court. ECF No. 5. The Pretrial Services Office prepared a bail study, but a detention hearing was delayed due to reports that the defendant was going through withdrawal from controlled substances. A detention hearing took place on September 9, 2026, at which point the defendant was ordered detained based on risk of flight. ECF No. 12. The defendant's appeal of the detention order was denied on September 14, 2026. ECF No. 16. On September 18, 2026, the United States filed an Information charging the defendant with violation of 18 U.S.C. § 113(a)(5), the same offense as the Complaint. ECF No. 17. On September 23, 2026, the defendant pleaded guilty to the sole count in the Information, not pursuant to a plea agreement. ECF No. 23. The United States informed the Court it would be seeking a custodial sentence. Given the maximum sentence for a Class B Misdemeanor is six months, the parties made a joint request and the Court agreed to waive the preparation of a Presentence Investigation Report by the Probation Office to expedite sentencing. The Court set sentencing for Wednesday, September 30, 2026.

## II. APPLICABLE GUIDELINES AND CRIMINAL HISTORY CATEGORY

While there no Sentencing Guidelines for most misdemeanor offenses, assault is an exception. *See* USSG § 2A2.3., comment. (backg'd) ("This section applies to misdemeanor assaults and battery and to any felonious assault not covered by §2A2.2 (Aggravated Assault)."). While the Assault Guidelines may be instructive for felony or Class A Misdemeanor assaults where the potential punishment is higher, they do not provide meaningful insight in this case because the Court is bound by the statutory maximum penalty for simple assault, which is 6 months. *See* 18 U.S.C. § 113(a)(5).

## II. SENTENCING RECOMMENDATION

### A. Legal Standard

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing set forth by Congress in 18 U.S.C. § 3553(a)(2). *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Where the Sentencing Guidelines are applicable, the Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *See id*. After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *See id*. at 991-93.

In arriving at the appropriate sentence, and in accordance with 18 U.S.C. § 3553(a), the Court should consider these factors applicable to the case, among others:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4) the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (5) the need to provide restitution to any victims of the offense.

### B. The Government's Recommendation

The United States requests that that the defendant be sentenced to 5 months' imprisonment plus

one court day, with release from 450 Golden Gate Avenue to U.S. Immigration and Customs Enforcement custody, and payment of the mandatory $10 special assessment. The United States consulted with the victim, who supports this requested sentence.

If the Court decides not to issue a custodial sentence, then in addition to release from 450 Golden Gate Avenue and payment of the $10 mandatory special assessment, the United States requests that the Court sentence the defendant to a probationary term of 3 years which includes two special conditions: (1) prohibiting the defendant from entering the Golden Gate National Recreation Area or the Presidio; and (2) prohibiting the defendant from reentering the United States without the express consent of the Secretary of the Department of Homeland Security, and requiring him to report to the nearest Probation Office within 72 hours of any reentry into the United States during that period of probation.[2] These conditions are to ensure that if the defendant illegally reenters the United States, he will not cause further harm to residents or federal park visitors, like the victim, and that he can be apprehended by immigration authorities in the event his presence in this country is not lawful.

**C. Probation's Recommendation**

Because this case is a Class B Misdemeanor, the parties requested and the Court agreed to waive a Presentence Investigation Report in order to expedite sentencing. Accordingly, there is no recommended sentence or case disposition from the Probation Office.

**D. Applying Section 3553(a) Factors**

**1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant[3]**

The defendant is a 40-year-old man who was born in El Salvador and claims to have entered the United States in 2005. Pretrial Services Rep. ("Pretrial Rep.") at 1. He has been transient in San Francisco for the past two years; before that, he reported being transient in San Francisco and/or living in his mother's residence in Monterey, California, for the past 10 years, though the address he provided for his mother's residence does not exist. *Id.* He represented to Pretrial Services, and the United States

---

[2] No term of supervised release is authorized for petty offenses, which include Class B Misdemeanors. See 18 U.S.C. § 3583(b)(3).

[3] Because no PSR was prepared in this case, the facts in this section are derived from the United States' Criminal Complaint or from Pretrial Services' September 1, 2026 Report.

has since confirmed, that he is a citizen of El Salvador and has no legal status in this country. *Id*. at 2. He has never married, but has two children, ages 18 and 15, with whom he has no contact. *Id* at 2. He maintains contact with his sister, who resides in Monterey. *Id*. at 1. He did not report any employment history for the past 5 years and stated he has used methamphetamines and fentanyl on a daily basis for the past 2 years. *Id*. at 2. Pretrial Services' criminal history check documents 20 years of constant contact with law enforcement in Monterey and San Francisco Counties, resulting in numerous probation violations and/or revocations, as well as convictions for the following offenses, many of which predate 2026, the year he told Pretrial Services his drug use began: Inflicting Corporal Injury on a Spouse/Cohabitant/Date (misdemeanor) (2014); Possession of Controlled Substance (misdemeanor) (2014); Violating Protective Order (misdemeanor) (2014); Trespass (misdemeanor) (2014); Battery of Spouse/Ex-Spouse/Date (misdemeanor) (2014); Evading a Peace Officer with Willful/Wanton Disregard for Safety (felony) (2018); Trespass (misdemeanor) (2020); Possession of Controlled Substance (misdemeanor) (2021); Disorderly Conduct (misdemeanor) (2021); Theft (misdemeanor) (2021); Possession of Controlled Substance (2022); Disorderly Conduct (misdemeanor) (2022); Battery of Peace Officer/Emergency Personnel (misdemeanor) (2022); Public Nuisance and Possession of Controlled Substance (misdemeanors) (2023); and Possession of Unlawful Paraphernalia (misdemeanor) (2025). *Id*. at 3-11. The multiple assault convictions—the most recent of which is in 2022—are particularly concerning, as they indicate that the defendant's assault of V-1 in August 2025 was not his first such offense, and that prior custodial sentences have failed to prevent further criminal conduct. Based on the Pretrial Services Report, the defendant appears to have made no positive contribution to his community or made any effort to obtain treatment, education, employment, or stability that might reduce his likelihood of future criminal acts.

The United States has weighed the few mitigating factors which support a sentence below the six month statutory maximum. First, the defendant did not use a weapon, attempt further battery on the victim, and did not prevent the victim from leaving the scene. Second, the defendant's deportation will also result in additional hardship beyond a simple sentence of incarceration and release which is serious and life-altering.

**2. The Need for the Sentence to Reflect the Seriousness of the Offense; Promote Respect for the Law and Provide Just Punishment**

The proposed sentence—5 months' incarceration and a $10 mandatory assessment—reflects the seriousness of the defendant's conduct and the permanent and serious impact of this sexual assault on the victim. The defendant could have chosen a private and unexposed area in a public restroom or nearby tree cover in the park to fulfill his sexual needs. Instead, the defendant deliberately targeted the victim: he sat down behind her and positioned himself at the conclusion of masturbating so that his sexual fluid would hit her body. He therefore purposefully degraded and humiliated another person to gratify himself, with no thought to the consequences of his actions on that woman's sense of safety, mental wellbeing, and right to control her own body.

The victim provided a written impact statement to the Court before the detention hearing. In that statement, she explained that this incident made her severely depressed and anxious. She recalled that the defendant gave her no notice, did not seek her consent, did not respond to her screams, and showed no remorse. As a result of this crime, she no longer feels safe in public spaces and has not returned to the area of the city where the attack occurred. She has flashbacks and has needed to take time off work. She reports she has been distant around her friends and family. She urged the Court not to release the defendant, and that a custodial sentence should be issued because he "deserves to learn his lesson." Her words underscore the seriousness of the offense and why a sentence of imprisonment is appropriate in this case.

**3. The Need for the Sentence to Afford Adequate Deterrence and Protect the Public from Further Crimes of the Defendant**

The victim's impact statement speaks eloquently about the profound damage that this attack has had on her sense of safety in her community and her ability to trust other people. The proposed custodial sentence will protect the public and adequately deter the defendant from further sexually deviant behavior in the Bay Area. Removal from the United States will immediately separate the defendant from San Francisco, prevent him from victimizing more members of the public at random, and provide peace of mind to the victim in this case.

## CONCLUSION

For the reasons stated above, the United States recommends that the Court sentence the defendant to a sentence of 5 months' imprisonment plus one court day so that he can be released from 450 Golden Gate Avenue and into the custody of U.S. Immigration and Customs Enforcement for further immigration proceedings; and payment of the mandatory $10 special assessment.

DATED: September 25, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Jean Fundakowski*

JEAN FUNDAKOWSKI
Assistant United States Attorney